# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00761-CV

**Hyundai Motor America, Appellant**

**v.**

**New World Car Nissan, Inc. d/b/a World Car Hyundai, World Car Nissan; New World Car Imports San Antonio, Inc. d/b/a World Car Hyundai; Texas Department of Motor Vehicles; Board of The Texas Department of Motor Vehicles; Guillermo "Memo" Trevino[1], in His Official Capacity as Chair of the Board of The Texas Department of Motor Vehicles; and Whitney Brewster, in Her Official Capacity as Executive Director of the Texas Department of Motor Vehicles, Appellees**

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-005912, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## O P I N I O N

Hyundai Motor America filed a petition for judicial review of a final order of the Board of the Texas Department of Motor Vehicles determining that Hyundai violated the Texas Occupations Code in its transactions with its franchised dealers. Before any proceedings occurred in the district court, several defendants removed the case to this Court. *See* Tex. Occ. Code § 2301.751(b). For the following reasons, we reverse the Board's order and remand this cause to the Board for further proceedings consistent with this opinion.

---

[1] This suit was originally brought against Raymond Palacios, Jr., the former Chair of the Board of the Texas Department of Motor Vehicles. We substitute the name of the successor to this office, Guillermo "Memo" Trevino. *See* Tex. R. App. P. 7.2.

**BACKGROUND**

Hyundai is the wholesale distributor for Hyundai products and services in the United States. New World Car Nissan, Inc. and New World Car Imports San Antonio, Inc. (collectively New World Car) are licensed, franchised Hyundai dealers in San Antonio. In November 2013, New World Car filed a formal complaint against Hyundai with the Department, alleging that between 2010 and 2013 Hyundai violated several provisions of Chapter 2301 of the Occupations Code. *See id.* §§ 2301.202–.203 (providing for filing and investigation of complaints of violations of Chapter 2301). Specifically, New World Car's complaint alleged that Hyundai violated the following provisions of the Occupations Code: (1) section 2301.467(a)(1) by "requiring [New World Car] to sell more vehicles than [Hyundai] actually provided in order to be considered 100% sales efficient"; (2) section 2301.468 by treating New World Car "unfairly or inequitably in the application of a standard or guideline" and by providing "unfair and inequitable vehicle inventory allocations"; and (3) section 2301.478(b) by providing "unfair allocations of insufficient inventory" and "requiring [New World Car] to sell more inventory than it was provided." *See id.* §§ 2301.467(a)(1), .468, .478(b).[2]

The Department referred the case to the State Office of Administrative Hearings (SOAH) for a contested-case hearing before an Administrative Law Judge (ALJ). *See id.* § 2301.704. After discovery and an evidentiary hearing, the ALJ issued a proposal for decision (PFD) concluding that New World Car had failed to prove that Hyundai violated the Occupations

---

[2] The version of section 2301.468 that was in effect during the time of the applicable events provided, "A manufacturer, distributor, or representative may not . . . discriminate unreasonably between or among franchisees in the sale of a motor vehicle owned by the manufacturer or distributor." Act of May 22, 2001, 77th Leg., R.S., ch. 1421, §5, 2001 Tex. Gen. Laws 4920, 4952 (codified at Tex. Occ. Code § 2301.468) (Former Section 2301.468). The ALJ and the Board properly made references to that version of the statute, and we review the Board's order under that version.

Code. In November 2016, the Board rejected the ALJ's analysis and the Director's recommendation and issued a final order that "overturned" the ALJ's "conclusion." The final order did not include a supporting rationale, fact findings, or legal conclusions.

In February 2017, the Board granted Hyundai's motion for rehearing. In August 2017, the Board amended the final order with new and modified findings and conclusions to replace those of the ALJ that the Board had rejected. The new conclusions stated that Hyundai violated sections 2301.467(a)(1), 2301.468(2), and 2301.478(b) of the Occupations Code.

## STANDARD OF REVIEW

We review the Board's order under the "substantial evidence" rule. *See id.* § 2301.751(a)(2) ("A party to a proceeding affected by a final order, rule, or decision or other final action of the board with respect to a matter arising under this chapter . . . may seek judicial review of the action under the substantial evidence rule in . . . the court of appeals for the Third Court of Appeals District."); *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd. of Tex. Dep't of Transp.*, 156 S.W.3d 91, 98 (Tex. App.—Austin 2004, pet. denied) (applying substantial-evidence review in case removed from district court). This standard requires that we reverse or remand a case for further proceedings in the following circumstances:

> [I]f substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> > (A) in violation of a constitutional or statutory provision;
> >
> > (B) in excess of the agency's statutory authority;
> >
> > (C) made through unlawful procedure;
> >
> > (D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174(2).

## DISCUSSION

### Jurisdiction over State appellees other than the Board

Before we reach the merits of Hyundai's issues, we address the Board's contention that the Court does not have subject-matter jurisdiction over any of the State appellees except the Board. The Board contends that because Hyundai seeks only judicial review of an order of the Board and asserts no other claim against any of the State defendants, those other defendant-appellees—the Department, the Chair of the Board, and the Department's Executive Director—should be dismissed from the case with prejudice.

The Occupations Code authorizes judicial review of "final action[s] of the [Department's] board" in matters arising under Chapter 2301. Tex. Occ. Code § 2301.751(a); *Keystone RV Co. v. Texas Dep't of Motor Vehicles*, 507 S.W.3d 829, 831 (Tex. App.—Austin 2016, no pet.). Chapter 2301's use of the term "board" refers to the nine-member governing board of the Department. *Keystone RV*, 507 S.W.3d at 834–35 & n.22 (citing Tex. Transp. Code § 1001.021, which creates Department's nine-member board). The Department, a statutorily created state agency responsible for administering and enforcing various statutory provisions, including Chapter 2301, *see* Tex. Transp. Code § 1001.002(a), (b)(3), "is composed of an executive director appointed by the board and other employees required to efficiently implement" applicable laws, *id.* § 1001.003.

4

The Board "has the exclusive original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles that are governed by" Chapter 2301. Tex. Occ. Code § 2301.151(a). Among other duties, the Board "shall" "administer th[e] chapter; . . . ensure that the distribution, sale, and lease of motor vehicles is conducted as required by th[e] chapter and board rules; . . . [and] prevent fraud, unfair practices, discrimination, impositions, and other abuses in connection with the distribution and sale of motor vehicles." *Id.* § 2301.152(a); *see also id.* § 2301.153(a) (listing powers and duties of Board). The Board is the entity charged with receiving, investigating, and resolving complaints of alleged violations of Chapter 2301, as it did here with respect to New World Car's complaint. *See generally id.* §§ 2301.201–.205 (providing for Board's receipt, investigation, and resolution of complaints).

Hyundai does not cite any authority supporting our jurisdiction over any of the State appellees other than the Board, and the only authority we have found leads us to conclude that besides the Board only the Executive Director is a proper State defendant. *See id.* § 2301.752(b) ("Citation for an appeal [of an order of the Board] must be served on the executive director or the executive director's designee and each party of record in the matter."); *see Texas Nat. Res. Conservation Comm'n v. Sierra Club*, 70 S.W.3d 809, 813–14 (Tex. 2002) (holding that in suit for judicial review, only agency "whose ruling is to be appealed" was "proper defendant to the district court proceeding" when neither APA nor enabling statute required service of citation on any other party). Accordingly, we conclude that we do not have subject-matter jurisdiction over the Department or the Chair of the Board, and we dismiss those parties from this suit.

5

*Hyundai's issues on appeal*

In several issues, Hyundai raises three basic contentions: (1) the Board "usurped the ALJ's role in the contested case process by acting as the finder of basic and adjudicative facts"; (2) the Board "failed to articulate a rational connection between an underlying agency policy and [its] altered findings of fact and conclusions of law"; and (3) the Board "engaged in improper, retroactive *ad hoc* rule-making." Hyundai specifically takes issue with the Board's following findings and conclusions that modified or reversed the ALJ's findings and conclusions:

- The Board's Findings of Fact 30 and 30A and Conclusion of Law 8 (the allocation findings and conclusion), which pertain to whether Hyundai's discretionary allocation[3] of vehicles to its San Antonio dealers during the relevant time period constituted "unreasonable discrimination," *see* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, §5, 2001 Tex. Gen. Laws 4920, 4952 (codified at Tex. Occ. Code § 2301.468) (Former Section 2301.468);

- The Board's Finding of Fact 52 and Conclusion of Law 6 (the sales-standard finding and conclusion), which pertain to whether Hyundai's use of a particular sales-efficiency metric[4] "required adherence to an unreasonable sales standard," *see* Tex. Occ. Code § 2301.467(a)(1); and

- The Board's Finding of Fact 53 and Conclusion of Law 9 (the good-faith-and-fair dealing finding and conclusion), which pertain to whether Hyundai's use of the sales-efficiency metric and discretionary allocations violated its duty to deal with its franchisees fairly and in good faith, *see id.* § 2301.478(b).

---

[3] The ALJ's findings, adopted by the Board, explain that Hyundai's system for allocating vehicles to its franchised dealers "consists of formula allocations, discretionary allocations, and manual allocations" and that discretionary allocations are "made by Hyundai's regional general manager, who may distribute up to 15%" of total available vehicles.

[4] The ALJ's findings, adopted by the Board, explain that sales efficiency is a "metric that Hyundai uses to measure dealer sales performance." The metric "compares a dealer's total sales to sales the brand expects to achieve in the dealer's primary market area. Hyundai calculates expected sales by applying Hyundai's national average sales penetration in each vehicle segment in which Hyundai competes to the actual number of vehicles registered in that segment in the dealer's primary market area."

*Restrictions on the Board's authority to change the ALJ's findings and conclusions*

Because the gravamen of Hyundai's appellate issues is that the Board unlawfully changed the ALJ's findings and conclusions, we begin with a review of the Board's authority to do that. The Occupations Code requires hearings "arising under" Chapter 2301 "to be conducted in accordance with . . . Chapter 2001, Government Code [the APA]." *Id.* § 2301.703(a); *see id.* § 2301.704(a) ("[A] hearing under this chapter must be held by an [ALJ] of the [SOAH]."); Tex. Gov't Code § 2001.058 (outlining procedures of SOAH hearings). APA section 2001.058(e) limits an agency's ability to change an ALJ's findings and conclusions:

> A state agency may change a finding of fact or conclusion of law made by the administrative law judge, or may vacate or modify an order issued by the administrative judge, only if the agency determines:
>
> (1) that the administrative law judge did not properly apply or interpret applicable law, agency rules, written policies provided under Subsection (c), or prior administrative decisions;
>
> (2) that a prior administrative decision on which the administrative law judge relied is incorrect or should be changed; or
>
> (3) that a technical error in a finding of fact should be changed.
>
> The agency shall state in writing the specific reason and legal basis for a change made under this subsection.

Tex. Gov't Code § 2001.058(e); *see also* Tex. Occ. Code § 2301.711(b)(3) ("An order or decision under this chapter must . . . give the reasons for the particular actions taken . . . .").

This Court has interpreted section 2001.058(e) as requiring an agency "to explain with particularity its specific reason and legal basis for each change made" pursuant to the section. *Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 515 (Tex. App.—Austin 2007, no pet.); *see Garcia v. Texas Real Estate Comm'n*, No. 03-14-00349-CV, 2016 WL

3068408, at \*3 (Tex. App.—Austin May 27, 2016, no pet.) (mem. op.); *Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 780–81 (Tex. App.—Austin 2005, no pet.). To meet this requirement, the agency must "articulate a rational connection between an underlying agency policy and the altered finding of fact or conclusion of law." *Sanchez*, 229 S.W.3d at 515 (quoting *Levy v. Texas State Bd. of Med. Exam'rs*, 966 S.W.2d 813, 815 (Tex. App.—Austin 1998, no pet.)). This Court has several times held an agency's explanation for modifying an ALJ's findings or conclusions to be inadequate and accordingly reversed the agency's order and remanded the cause to the agency for compliance with section 2001.058(e)'s requirements. *See Garcia*, 2016 WL 3068408, at \*4, \*10; *Granek*, 172 S.W.3d at 782; *Levy*, 966 S.W.2d at 816.

Additionally, when an agency changes so-called "basic" or "adjudicative" facts, we review its justifications therefor under a "stricter standard" than we review an alteration to so-called "legislative" or "ultimate" facts. *See Texas State Bd. of Med. Exam'rs v. Dunn*, No. 03-03-00180-CV, 2003 WL 22721659, at \*4–5, \*11 (Tex. App.—Austin Nov. 20, 2003, no pet.) (mem. op.) (holding that board "failed to carry its burden to articulate a reasonable evidentiary basis for rejecting the ALJ's [adjudicative] findings of fact"); *Flores v. Employees Ret. Sys.*, 74 S.W.3d 532, 540–41 (Tex. App.—Austin 2002, pet. denied) (holding that in making changes to adjudicative facts, board was not entitled to "reweigh" evidence or make findings that were "not supported by any evidence"). Adjudicative facts usually answer the questions of "who did what, when, how, why, with what motive or intent" and are "roughly the kind of facts that go to a jury in a jury case." *Flores*, 74 S.W.3d at 539 (quoting 2 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.2 at 3 (3d ed. 1994)). The litigants may offer conflicting evidence as to adjudicative facts, which the fact-finder resolves by determining how much weight to give each side's evidence. *Id.* The resolution of adjudicative facts often requires

8

making credibility determinations, which an ALJ is better suited to do than an agency or board reviewing a PFD. *Id.*

On the other hand, "legislative" or "ultimate" facts "do not usually concern the immediate parties but are the general facts that help the tribunal decide questions of law and policy and discretion." *Id.* "A finding of ultimate fact is reached by inference from basic facts." *West Tex. Utils. Co. v. Office of Pub. Util. Counsel*, 896 S.W.2d 261, 270 (Tex. App.—Austin 1995, no writ). A finding of ultimate fact "usually involves 'a conclusion of law or at least a determination of a mixed question of law and fact.'" *Hunter Indus. Facilities, Inc. v. Texas Nat. Res. Conservation Comm'n*, 910 S.W.2d 96, 104 (Tex. App.—Austin 1995, writ denied) (quoting *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 491 (1937)). Therefore, an ultimate finding pertaining to compliance with a statutory standard, when that determination is committed by law to the discretion of an agency, has the same legal effect as a conclusion of law. *See id.* at 104–05. A finding that a utility rate is "reasonable" is an example of a finding of ultimate fact, *West Tex. Utils.*, 896 S.W.2d at 270, as is a finding about whether common carriers' services and facilities are "inadequate," *see Professional Mobile Home Transp. v. Railroad Comm'n*, 733 S.W.2d 892, 899 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *see also Railroad Comm'n v. Broussard*, 755 S.W.2d 951, 955 (Tex. App.—Austin 1988, writ denied) (noting that whether oil-interest owner's offer to pool interests with adjoining oil-interest owner is "fair and reasonable" as required by Natural Resources Code is mixed question of law and fact). When reviewing an agency's findings of ultimate fact, a reviewing court is "limited to the inquiry of whether the agency's findings of basic fact reasonably support its findings of ultimate fact." *Professional Mobile Home Transp.*, 733 S.W.2d at 899.

With this background about the Board's authority to change the ALJ's findings and conclusions, we turn to the Board's modifications to the ALJ's fact findings and conclusions.

***Changes to the ALJ's allocation finding and conclusion***

The ALJ's Finding of Fact 30 reads, "It was reasonable for Hyundai to reward dealers that participated in Hyundai-sponsored programs and renovated their facilities with extra discretionary allocation."[5]  The Board amended the finding solely by adding the word

---

[5] With the exception of Finding of Fact 30, the Board adopted all of the ALJ's findings of fact on the topic of discretionary allocations:

> 18.   In 2009, during the first six months of Mr. Hetrick's tenure as regional general manager, he provided 134 cars through discretionary allocation to Red McCombs and 20 to World Car.
>
> 19.   The differences in discretionary allocation between Red McCombs and World Car continued through 2013.
>
> 20.  In 2009 and 2010, World Car voluntarily reduced its inventory.
>
> 21.  Red McCombs dealerships maintained their high inventory levels during the 2008-2010 recession.
>
> 22.  In 2010, Red McCombs Superior became an exclusive Hyundai dealership.
>
> 23.  World Car South shares a dealership with the Kia brand.
>
> 24.  Red McCombs Northwest added the luxury Equus line that required a facility upgrade and then renovated the store.
>
> 25.  Red McCombs Superior renovated its dealership in 2011-2012.
>
> 26.  Red McCombs participated in Hyundai's service loaner program.
>
> 27.   World Car chose not to participate in the available programs provided by Hyundai that could have increased the allocation available to World Car.

10

"not" before the word "reasonable": "It was **not** reasonable for Hyundai to reward dealers that participated in Hyundai-sponsored programs and renovated their facilities with extra discretionary allocation." (Emphasis added.) The Board also added new Finding of Fact 30A: "Hyundai discriminated unreasonably between franchisees in the sale of motor vehicles owned by the distributorship."

These modifications constituted a 180-degree change to the ALJ's finding as did the Board's corresponding modification to Conclusion of Law 8. The ALJ's Conclusion of Law 8 reads, "World Car failed to meet its burden of proof to show that Hyundai engaged in unreasonable sales discrimination in the allocation of vehicle inventory because World Car did not participate in many of the programs that would have permitted additional discretionary allocations." In contrast, the Board's modified Conclusion of Law 8 reads, "Hyundai discriminated unreasonably between franchisees in the sale of motor vehicles owned by the distributor, when Hyundai treated World Car differently in the discretionary allocation of vehicle inventory." *See* Former Section 2301.468 (manufacturer or distributor "may not . . . discriminate unreasonably between or among franchisees in the sale of a motor vehicle").

The entirety of the Board's explanation for its change to Finding of Fact 30 and addition of Finding of Fact 30A reads

> Finding of Fact 30 is amended and Finding of Fact 30A is added in accordance with Texas Government Code § 2001.058(e)(1), because the ALJ misapplied applicable law. World Car dealerships received a total of 20 discretionary vehicles, while another franchisee's two dealerships received a total of 134 discretionary

---

28. World Car did not renovate a dealership until 2014, when it renovated World Car North.

29. World Car did not participate in Hyundai's service loaner program.

vehicles. With regard to allocation of the discretionary vehicle inventory (up to 15% of a franchise's total inventory), Hyundai treated franchisees differently. Hyundai discriminated unreasonably between franchisees in the sale of motor vehicles owned by Hyundai.

The first sentence of the explanation is a mere restatement of one of the permissible statutory bases for an agency's modification to a finding or conclusion: because an ALJ "did not properly apply or interpret applicable law." *See* Tex. Gov't Code § 2001.058(e). As such, it cannot meet the requirement of a statement in writing of "the specific reason" for the change. *See id.* The second sentence of the explanation is a summary of the same exact basic fact findings made in the ALJ's unmodified Finding of Fact 18, which reads: "In 2009, during the first six months of Mr. Hetrick's tenure as regional general manager, he provided 134 cars through discretionary allocation to Red McCombs and 20 to World Car." Restating a previous finding of fact also cannot meet section 2001.058(e)'s requirement that the agency state the "specific reason" for changing a finding of fact because it provides no basis upon which a court may review whether the agency's change was arbitrary and capricious.

The Board is left to rely, then, on the final two sentences of its explanation. Essentially, the Board's explanation (paraphrased) is: Hyundai treated its franchisees differently by allocating vehicles in the ratio of 134 to 20, and discretionary allocation of vehicles in that ratio constitutes unreasonable discrimination. That is the entirety of the Board's explanation of the specific reason for its opposite conclusion from the ALJ. However, such a conclusory statement simply cannot be what the legislature intended when it required an agency not only to determine that an ALJ improperly applied or interpreted applicable law but also to explain the specific reason and legal basis for such determination. The Board's explanation does not identify which applicable law the ALJ misapplied or misinterpreted, why that interpretation or

12

application was incorrect, or how the Board reached the opposite conclusion on the *same basic facts*.

The Board is charged with regulating the sale and distribution of motor vehicles, administering Chapter 2301, investigating and resolving complaints, and preventing unfair practices and discrimination in connection therewith. *See* Tex. Occ. Code §§ 2301.151–.153, .201–.205. We therefore agree with the Board that its Findings 30 and 30A are ultimate findings rather than basic findings because it has the discretion to make ultimate policy determinations—such as whether particular factual scenarios constitute unreasonable discrimination, a highly fact-specific inquiry constituting a mixed question of law and fact—in the course of carrying out its statutory duties. However, the Board's modifications to ultimate fact findings and conclusions must nonetheless comply with the APA. The Board's explanation here is akin to the parenting fiat, "Because I said so." As this Court has recognized, the legislature requires more of agencies. *See Garcia*, 2016 WL 3068408, at \*3–4; *Granek*, 172 S.W.3d at 781–82; *Levy*, 966 S.W.2d at 815.

For the same reasons, we conclude that the Board's explanation of its change to Conclusion of Law 8 fails to comply with section 2001.058(e) and applicable caselaw. In its entirety, the explanation reads

> Conclusion of Law 8 is modified in accordance with Texas Government Code § 2001.058(e)(1) because the ALJ misapplied applicable law. The modification clarifies that—although World Car did not participate in Hyundai's programs that would have permitted World Car additional discretionary inventory—Hyundai's discretionary allocations were unreasonably discriminatory.

Again, this is insufficient under section 2001.058(e) to explain how the Board's *opposite* ultimate findings and conclusion are reasonably supported by the ALJ's twelve basic findings

13

that the Board adopted, and it does not articulate *any* rational connection between any underlying agency policy and the altered findings and conclusion, as it must. *See Sanchez*, 229 S.W.3d at 515.

### Changes to the ALJ's sales-standard finding and conclusion

The ALJ's Finding of Fact 52 reads, "Measuring sales efficiency does not require adherence to unreasonable sales or service standards."[6]  The Board's modified Finding of Fact 52 reads, "The requirement that World Car meet 100% sales efficiency requires adherence to unreasonable sales or service standards because Hyundai was aware that World Car did not

---

[6] With the exception of Finding of Fact 52, the Board adopted all of the ALJ's basic findings of fact on the topic of the sales-efficiency standard:

> 39.  In 2008, both World Car North and South were over 100% sales efficient.  In 2009, the north store dropped to 96.8% and continued to drop over time.  In 2014, it was 65.7% sales efficient.  The south store fared worse.  It dropped to 17.9% sales efficient in 2013 but rebounded in 2014 to 31.2% sales efficient.
>
> 40.  In 2009, Toyota opened a manufacturing plant and new dealership close to World Car South.  The manufacturing plant employs about 6,000 people.  Those employees had incentives to purchase Toyota products.
>
> 41.  From 2010 until 2013, Hyundais were in short supply worldwide, primarily due to the high demand caused by the Japanese tsunami that devastated Japanese manufacturing.
>
> 42. Hyundai was aware that some dealers could not achieve 100% sales efficiency with the lower inventory.
>
> 43.  Hyundai measured sales efficiency in the same manner for all dealers.
>
> 50.  Maintaining 100% sales efficiency is not a requirement to be or to remain a licensed Hyundai dealer.
>
> 51.  World Car stores have not been 100% sales efficient for several years, and both are operating under valid dealer agreements.

14

have sufficient inventory to meet 100% sales efficiency." *See* Tex. Occ. Code § 2301.467(a)(1) ("Notwithstanding the terms of any franchise, a manufacturer, distributor, or representative may not . . . require adherence to unreasonable sales or service standards . . . ."). The entirety of the Board's explanation for its modification reads

> Finding of Fact 52 is amended in accordance with Texas Government Code § 2001.058(e)(1), because the ALJ misapplied the applicable law. World Car's complaint was not that "measuring sales efficiency" was unreasonable, but that requiring 100% sales efficiency was unreasonable because Hyundai knew that World Car did not have sufficient inventory to meet 100% sales efficiency. World Car's requests for additional inventory to meet the 100% Sales Efficiency were ignored.

As previously noted, the first sentence of the explanation does not shed any light on the Board's reasoning; it is merely a recap of the statutory requirement supporting a modification (i.e., that the agency determine, relevantly here, that the ALJ "did not properly apply applicable law"). *See* Tex. Gov't Code § 2001.058(e)(1). The second sentence of the explanation constitutes a new finding of basic fact—that Hyundai "required" of World Car 100% sales efficiency. It is directly contrary to the ALJ's Finding of Fact 50—adopted by the Board—which reads, "Maintaining 100% sales efficiency is *not a requirement* to be or to remain a licensed Hyundai dealer." (Emphasis added.) The final sentence of the explanation—noting that World Car's requests for additional inventory were ignored—also constitutes a new finding of basic fact.

An ALJ is a "disinterested hearings officer" to whom the legislature has delegated the duty of basic fact-finding. *See Flores*, 74 S.W.3d at 539–40. An agency cannot frustrate the delegation of the fact-finding role by ignoring an ALJ's "findings with which it disagrees and substitut[ing] its own additional findings." *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 564 (Tex. 2000) (discussing school board's authority under Education Code to change findings

15

of fact made by hearing examiner where statute did not specifically provide for board to find additional facts and permitted changes to findings only if supported by substantial evidence). When the APA or other applicable enabling statute does not specifically provide for an agency's board to find facts in addition to those found by the hearing examiner, the board exceeds its authority by so doing. *See id.* "If a board could find additional facts, resolving conflicts in the evidence and credibility disputes, it would then be serving as its own factfinder despite delegating the factfinding role to a hearing examiner, and the process of using an independent factfinder would be meaningless." *Id.*

Setting aside for now the issue of whether the sales-efficiency standard was "unreasonable," we note that section 2301.467 makes it unlawful to "require" adherence to an unreasonable standard. *See* Tex. Occ. Code § 2301.467. However, the ALJ made no finding of basic fact that Hyundai *required* adherence to its 100% sales-efficiency standard; to the contrary, the ALJ found that Hyundai did *not* require adherence to the sales standard. By modifying Finding of Fact 52—which constituted the making of an additional finding of basic fact in direct contravention of a basic finding of the ALJ—and failing to support its modification with citations to record evidence, the Board acted arbitrarily and capriciously, abused its discretion, and violated section 2002.058(e). *See Davis*, 34 S.W.3d at 564; *Dunn*, 2003 WL 22721659, at *4–5; *see also* Tex. Gov't Code §§ 2001.058(e), .174(2)(F). The Board's corresponding Conclusion of Law 6—"World Car met its burden of proof to show that Hyundai required adherence to unreasonable sales or service standards"—was likewise the opposite conclusion from that of the ALJ and, for the same reasons, violates the APA.

*Changes to the ALJ's good-faith-and-fair-dealing finding and conclusion*

World Car alleged that Hyundai violated the statutory duty of good faith and fair dealing through its discretionary allocations and sales-standard "requirement." *See* Tex. Occ. Code § 2301.478(b) ("Each party to a franchise owes to the other party a duty of good faith and fair dealing that is actionable in tort."). The ALJ's Finding of Fact 53 reads, "The allocation system and sales efficiency metric do not treat World Car unfairly."[7] Again, the Board made the complete opposite finding. Its modified Finding of Fact 53 reads, "The discretionary allocations made to the San Antonio market during 2010 and 2013 were unfair, and Hyundai's requirement that World Car meet 100% sales efficiency despite the dealership's known lack of inventory was unfair." We have already sustained Hyundai's complaint with respect to the latter half of modified Finding 53 by determining that the Board abused its discretion in making a new basic fact finding that the sales standard was a "requirement." The Board's conclusion that the sales standard "requirement" was "unfair" must, accordingly, be reversed. We therefore consider only the propriety of the Board's new Finding of Fact 53 and corresponding Conclusion of Law 9 as they pertain to the "unfairness" of Hyundai's discretionary allocations.

The entirety of the Board's explanation for the change to Finding 53 reads

> Finding of Fact 53 is amended in accordance with Texas Government Code § 2001.058(e)(1), because the ALJ misapplied the applicable law. Hyundai's discretionary inventory allocations to a nearby dealer were nearly triple the amount provided to World Car and thus, unfair and not made in good faith. Additionally, despite repeated requests for additional inventory to meet 100% sales efficiency, World Car's requests were either ignored or rejected by Hyundai.

---

[7] We have previously recited the ALJ's basic fact findings relevant to the allocation and sales standard, all of which the Board adopted except for the few findings and conclusions challenged by Hyundai and addressed in this opinion.

17

As previously noted, the first sentence of the explanation is merely a restatement of the statutory requirement supporting a modification (i.e., that the ALJ "misapplied the applicable law"). *See* Tex. Gov't Code § 2001.058(e). The first half of the second sentence (that Hyundai's discretionary allocations to a nearby dealer were "nearly triple" the amount provided to World Car) appears to be a basic finding of fact, but the ALJ did not make such a finding, and the Board does not support the finding with any record citations. The Board may not make additional basic fact findings. *See Davis*, 34 S.W.3d at 564. Thus, the first half of the second sentence of the explanation is insufficient to support the Board's modification of Finding of Fact 53. The second half of the second sentence is merely a statement that the ratio of discretionary allocations was "unfair and not made in good faith." As to its conclusion that the ratio is "unfair," the Board does not explain *why* that ratio is unfair or cite to any evidence supporting the opposite conclusion from that of the ALJ, which is supported by the adopted findings of fact. The Board's explanation also does not explain how the ALJ allegedly "misapplied applicable law" or even which applicable law was misapplied. As to the Board's conclusion that the allocations were not made in "good faith," we note that the ALJ made no findings at all pertaining to Hyundai's bad faith, and the Board's new finding that Hyundai's discretionary allocations were made in "bad faith" both exceeded its authority, *see Davis*, 34 S.W.3d at 564, and is not supported by any underlying fact findings.

We conclude that the Board's explanation of its changes to Finding of Fact 53 and corresponding Conclusion of Law 9[8] are insufficient to meet section 2001.058(e)'s requirements

---

[8] The Board's Conclusion of Law 9—"World Car met its burden of proof to show that Hyundai violated its duty of good faith and fair dealing through allocations and sales efficiency"—was the exact opposite of the ALJ's conclusion that World Car did not meet its burden on that issue.

18

to state the "specific reason" and "legal basis" for the changes. *See* Tex. Gov't Code § 2001.058(e). The Board did not explain how its *opposite* ultimate findings and conclusion are reasonably supported by the ALJ's numerous basic findings that the Board adopted, and it does not articulate *any* rational connection between any underlying agency policy and the altered findings and conclusion. *See Sanchez*, 229 S.W.3d at 515.

## CONCLUSION

Because the Board's changes to the ALJ's findings of fact and conclusions of law did not comply with the APA, we reverse the Board's order and remand the cause to the Board for further proceedings consistent with this opinion.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Reversed and Remanded

Filed: July 3, 2019